Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 750 | **DATE** | 1/14/2004 |
| **CASE TITLE** | USA vs. Daniel Salley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court concludes that defendant is competent to stand trial. Pretrial conference is set for 2/4/04 at 9:30 a.m. Parties are to submit by 1/18/04 a brief memorandum of law concerning whether defendant should be allowed to represent himself. Counsel for defendant and government are further requested to consider the advisability of appointing a mental health advisor to the court as recommended by Dr. Roesch.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 16 2004 | |
| | Notified counsel by telephone. | | date docketed | 96 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/14/2004 | |
| MD | courtroom deputy's initials | 04 JAN 14 PM 8:50 | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 01 CR 0750 |
| | ) | Judge Joan H. Lefkow |
| DANIEL E. SALLEY, | ) | |
| | ) | |
| Defendant. | ) | **DOCKETED** |
| | ) | JAN 1 6 2004 |

## MEMORANDUM OPINION AND ORDER

On January 31, 2003, this court entered an order finding in this case that the defendant, Daniel Salley, was "presently suffering from a mental disease or defect (Delusional Disorder) rendering him mentally incompetent to the extent that he is unable to assist properly in his defense." Memorandum Opinion and Order at 17 [Docket # 66], 246 F. Supp. 2d 970 ("January 2003 Decision"). The order committed the defendant to the custody of the Attorney General for hospitalization for treatment, to be returned to court after 90 days, and directed the Attorney General to provide a report on whether the progress of treatment has restored the defendant to competency. On July 7, 2003, A. F. Beeler, Warden, Federal Bureau of Prisons, Butner, North Carolina, transmitted a progress report prepared by Dr. Angela Walden Weaver, Ph.D, Staff Psychologist ("Report"). A hearing on restoration of competency began on September 26, 2003 and concluded on November 14, 2003, at which Dr. Ronald Roesch, Ph.D., called by the United States Attorney, testified.

The court, having reviewed the evidence considered in the January 2003 Decision, and having considered the Report, the testimony of Dr. Roesch, and the transcript of Dr. Roesch's interview/evaluation of defendant of September 25, 2003 (Salley Exhibit B), enters the following decision finding the defendant competent to stand trial.

## SUMMARY OF THE EVIDENCE

The Report reflects that defendant was admitted to the Federal Medical Center, Butner, North Carolina ("FMC"), on February 21, 2003. Defendant was not taking psychotropic medication upon admission and he was not treated with any such medication during his confinement at FMC. Indeed, although this court ordered that defendant be treated, the Report states, "The primary clinician considered whether Mr. Salley would benefit from psychotropic intervention, and tentatively scheduled an involuntary medication hearing[, but] decided that Mr. Salley would not benefit from treatment with psychotropic medication, and cancelled the involuntary medication hearing." Report 13.[1] It further appears that although Dr. Weaver believes that "the treatment of choice" for defendant's disorder is "long-term (*i.e.*, many years) of insight oriented, individual, therapy," no effort was made to engage defendant in therapy during his confinement at FMC, as Dr. Weaver believed the prognosis for such treatment is poor because defendant would have difficulty perceiving himself as a patient or subordinate and would not likely engage in the therapeutic relationship. *Id.* at 17.

---

[1] Dr. Weaver acknowledged that Dr. Christine Scronce, on whose diagnosis of Delusional Disorder this court relied in the January 2003 Decision, had indicated that antipsychotic medications could result in "at least a lessening in the intensity of symptoms [of Delusional Disorder]." Report 10-11; *see* Scronce Report, Sept. 5, 2002, 11. Dr. Weaver did not explain why defendant would not benefit from psychotropic medications. Report 13. Dr. Roesch stated that narcissists (Dr. Weaver's diagnosis) are not typically treated with drugs but also did not elaborate. Transcript of Proceedings, September 26, 2003, 26.

2

The Report, then, amounts to a forensic evaluation based on clinical observations made over approximately four months. Dr. Weaver's observations are generally consistent with those of previous examiners. *See* January 2002 Decision. Dr. Weaver diagnosed defendant with Adult Anti-Social Behavior (Diagnostic and Statistical Manual of Mental Disorders-Text Revised (4th ed., 2000)("DSM-IV-TR") V71.01) on Axis I and Narcissistic Personality Disorder (DSM-IV-TR 301.81) on Axis II.[2] Dr. Weaver concluded that defendant is competent to stand trial.

The diagnostic criteria for Narcisissistic Personality Disorder are the following:

A pervasive pattern of grandiosity (in fantasy or behavior), need for admiration, and lack of empathy, beginning by early adulthood and present in a variety of contexts, as indicated by five (or more) of the following:

(1) has a grandiose sense of self-importance (e.g., exaggerates achievements and talents, expects to be recognized as superior without commensurate achievements)
(2) is preoccupied with fantasies of unlimited success, power, brilliance, beauty, or ideal love
(3) believes that he or she is "special" and unique and can only be understood by, or should associate with, other special or high-status people (or institutions)
(4) requires excessive admiration
(5) has a sense of entitlement, i.e., unreasonable expectations of especially favorable treatment or automatic compliance with his or her expectations
(6) is interpersonally exploitative, i.e., takes advantage of others to achieve his or her own ends
(7) lacks empathy: is unwilling to recognize or identify with the feelings and needs of others

---

[2]Axis I and Axis II are terms used in the DSM-IV-TR. Axis I comprehends Clinical Disorders and Other Conditions That May Be the Focus of Clinical Attention, and Axis II comprehends Personality Disorders and Mental Retardation. DSM-IV-TR at 27-30. Adult Anti-Social Behavior is not defined at DSM-IV-TR V71.01. The text states, "When these problems are the principal focus of clinical attention, they should be listed on Axis I. Otherwise.... they may be listed on Axis IV [Psychosocial and Environmental Problems]. DSM-IV-TR at 737. Anti-Social Personality Disorder (301.7) is listed on Axis II, although Dr. Weaver did not apply the diagnostic criteria of this condition (DSM-IV-TR 706) to defendant. In any event, both Anti-Social Personality Disorder and Adult Anti-Social Behavior may be characterized by criminal behavior; thus, this diagnosis does not significantly bear on the issues before this court. *See* Roesch testimony, Transcript of Proceedings, September 26, 2003, 22, ll. 4-8.

(8) is often envious of others or believes that others are envious of him or her
(9) shows arrogant, haughty behaviors or attitudes

DSM-IV-TR at 717.

Dr. Weaver identified in defendant criteria (1); (5) and possibly (6). Report 14. She ruled out Delusional Disorder on the basis that during his confinement at FMC defendant "did not exhibit the associated features of Delusional Disorder, such as ideas of reference, in which random events are of special significance. He did not present as generally irritable, resentful, angry or dysphoric, . . . [and] did not file numerous frivolous complaints . . . or lawsuits in an attempt to remedy some perceived slight." *Id.* at 15-16. Further, he did not talk "*ad nauseum*" about who was conspiring against him or trying to harm him, and he maintained good behavioral control. Dr. Weaver concluded that "[w]hile Mr. Salley may have suffered from Delusional Disorder in the past, during the past four months he did not, and therefore, the diagnosis is documented only for historical purposes." *Id.* at 16.[3] She pointed out that Dr. Christine Scronce, on whose report the court relied in the January 2003 Decision, stated that Delusional Disorder may wax and wane; thus, she inferred that defendant's history of Delusional Disorder had apparently waned during his confinement at FMC. *Id.* at 16.

---

[3]Dr. Scronce diagnosed Delusional Disorder, Persecutory Type. Delusional Disorder entails "Non-bizarre delusions (i.e., involving situations that occur in real life, such as being followed, poisoned . . .)," but other behavior is not obviously bizarre. *See* DSM-IV-TR 297.1. Persecutory Type is described in DSM-IV-TR at 325 as follows:

**Persecutory Type.** This subtype applies when the central theme of the delusion involves the person's belief that he or she is being conspired against, cheated, spied on, followed, poisoned or drugged, maliciously maligned, harassed, or obstructed in the pursuit of long-term goals. Small slights may be exaggerated and become the focus of a delusional system. The focus of the delusion is often on some injustice that must be remedied by legal action ("querulous paranoia"), and the affected person may engage in repeated attempts to obtain satisfaction by appeal to the courts and other government agencies. Individuals with persecutory delusions are often resentful and angry and may resort to violence against those they believe are hurting them.

4

Regarding defendant's lack of ability to cooperate with counsel, Dr. Weaver concluded that this was related to his grandiosity and sense of entitlement. *Id.* at 14. She stated,

> Mr. Salley's personality type is going to cause him to continue to have problems with his attorney. He will likely have problems with any attorney assigned to his case unless they are in a secondary, stand-by role. Unless he is assigned an attorney who is willing to do exactly as he requests, he will assume the person does not have his best interests in mind. His behavior is characteristic of people with severe personality disorders. Mr. Salley is so self-absorbed that he is not able to see any viewpoint except his own. He does not want to work with an attorney who will not let him conduct his defense in the manner that he sees fit. Mr. Salley does not believe that anyone could truly have his best interest in mind, so he thinks he has to do everything himself. He is not confident that attorneys paid by the government will present his evidence because it will put the government in a "bad light." . . . .

*Id.* at 17-18.

Relying on this report as well as his second interview with defendant, Dr. Roesch testified that, although a diagnosis of Narcissistic Personality Disorder is "arguable," he is convinced, at least, that defendant does not now have and "has probably never had a delusional disorder." Transcript of Proceedings, September 26, 2003, 22, 27. This is significant, he said, because Narcissistic Personality Disorder is not a major mental illness (Axis I in DSM language) but rather a less serious impairment that would not impair his ability to make decisions in the course of a trial or participate in a defense.[4]

With respect to the determinative issue of whether defendant is able to cooperate with counsel, Dr. Roesch stated, "I think he has the ability to cooperate with his attorney. He may

---

[4] Dr. Roesch indicated that Axis I disorders are much more likely than Axis II disorders to correlate with incompetency to stand trial. *See* Transcript of Proceedings, September 26, 2003, 17, ll. 15-21. He acknowledged, however, that the categories are not exclusive, *i.e.*, an individual with an Axis II disorder could be incompetent and one with an Axis I disorder could be competent. *See* Transcript of Proceedings, October 30, 2003, 17-18; *see also United States v. Mooney*, 123 F. Supp. 2d 442, 443-44 (N.D. Ill. 2000) (indicating the DSM-IV categories are not bright line indicators of the presence or absence of mental disease or defect).

5

make a choice not to cooperate but he has the ability to make that choice. In other words, there is nothing about his thought process that would render him incompetent to make that choice." *Id.* at 20. Although Dr. Roesch, in response to the court's question, responded affirmatively when asked, "[Would you] agree that he has inability to put sufficient trust in counsel for counsel to represent him[?]," Dr. Roesch believed this inability was based on his experiences with the several appointed counsel in this case. *Id.* at 49.

On examination by defendant's appointed counsel, Paul Wagner, Dr. Roesch conceded that because defendant has refused to submit to diagnostic personality tests, these useful tools were not available to inform the diagnosis. Transcript of Proceedings, October 30, 2003, 13. Dr. Roesch conceded that defendant is "not only wary of the motivation of attorneys, but of virtually everybody that he comes in contact with . . . ." *Id.* at 22. He acknowledged that defendant believes that in light of *Sell* v. *United States*, 123 S. Ct. 1274 (2003),[5] the conspiratorial plan has changed. Whereas before he believed that Dr. Roesch was being called in to find him incompetent, he now believes that the government wants a finding of competency "and let's railroad him." Transcript of Proceedings, October 31, 2003, 23. He conceded that although defendant seemed originally to believe that another appointed attorney, Kent Anderson, who filed an appeal from the January 2003 Decision, was a lawyer he could work with, once Mr. Anderson filed a motion to stay the appeal until this restoration of competency proceeding was complete, defendant decided that Mr. Anderson was also part of the conspiracy "concocted by the Court."

---

[5]In *Sell*, the Court held that a mentally ill defendant "facing serious criminal charges" may forcibly be given antipsychotic drugs to render that defendant competent to stand trial "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 123 S.Ct. at 2184.

6

*Id.* at 25. He acknowledged that defendant believes that he has the complete right to control his defense, including those matters ultimately committed to counsel such as which witnesses to examine. Again, Dr. Roesch reiterated that this is a free choice which he makes in light of his experiences with his attorneys in this case rather than a delusion or other mental disorder. At the same time, he acknowledged the fact that defendant is suspicious of everybody involved in his case, including four appointed lawyers, the prosecutors, clerks of the court, the district judge, and the appellate judge who granted the stay motion, *id.* at 37-40, and there is no question that he has a conspiratorial view, "that people in the courtroom involved in this case are working against him." Asked if defendant is competent to assist properly in his defense if a lawyer in fact is assigned to represent him, Dr. Roesch responded, "I believe that ... it will be a difficult interaction if he is not allowed to represent himself," which in Dr. Roesch's judgment is why he should be allowed to represent himself. *Id.* at 41-43.

The court makes the following additional observations, based principally on its review of the transcript of Dr. Roesch's interview: Defendant appears to be convinced that a conspiracy exists. He believes that "the Government" knows that defendant has proof that Officer Airhart was actually shot by a fellow FBI agent and accuses defendant in order to protect that agent; he believes this is "why the competency issue came up in the first place." Roesch Interview Transcript at 13, ll. 1-14; 44, ll. 8-30. He believes the prosecutors chose Kent Carlson to represent him. *Id.* at 23, ll. 22-31.

Defendant is attempting to file a law suit alleging a conspiracy between the court and the government, to railroad him to prison after he is found competent. *Id.* at 22, 29. He also suspects, in addition to the lawyers and judges, that the surgery on his knee was unneeded and

7

must have been done for malevolent reasons, *id.* at 62-63; and that Congressman Bobby Rush and Dr. Weaver may be also involved in the conspiracy. *Id.* at 13, 15, 27, 32, 49.

The reality is there is no conspiracy surrounding defendant, neither a conspiracy to find him incompetent in order to prevent the discovery that an FBI agent shot Officer Airhart, nor a conspiracy to find him competent in order to "railroad" him into a long prison sentence, nor any other conspiracy. Defendant believes a false reality that a conspiracy exists.

Each of defendant's relationships with counsel has dissolved because the attorney took an action in representation that displeased defendant. Mr. Meyer declined to seek review of the magistrate judge's detention order on the basis that it would be futile[6]; Mr. Carlson filed a motion to sever the charges of bank robbery and misdemeanant in possession of weapon from the charges related to the events of August 28, 2001, *id.* at 51-52; *see* Docket #41; Mr. Anderson moved to stay briefing on the appeal until the restoration of competency proceeding was completed. Roesch Interview Transcript at 37. As stated above, defendant suspects that Mr. Wagner, the most recently appointed counsel, is also involved in the conspiracy. *See also* Transcript of Proceedings, November 14, 2003, 12.[7] Although he continues to profess that he could work with some privately retained attorneys, defendant would still insist that any such attorney would have to do as he instructed. Roesch Interview Transcript at 45-46.

---

[6] Defendant was also angry because Mr. Meyer had the agent whom defendant believes shot Officer Airhart accompany him to visit defendant's parents to inquire about whether they would post their home as collateral for bond. Although this seems unlikely, the court has no information that this did not occur.

[7] At the close of the hearing, after a discussion of whether briefs would be filed, defendant was given an opportunity to speak. He stated, "I have, as I have stated, I had problems exercising basic rights. My attorneys that you have appointed, they seem to be going, obeying everything that the prosecution wants, and you seem to be going along with everything that is going on here. So an honest question I have, and that is, are you in a conspiracy with the prosecutors and public defenders to deprive me of my rights and privileges?"

8

The reality is that an attorney has a right to make decisions while representing a client, with the exceptions that only the defendant may waive constitutional rights and counsel must make decisions in consultation with the client. *See* January 2003 Decision, 246 F. Supp. 2d at 977 & n.8. Defendant believes a false reality that he has a right to be completely in charge of his case and an attorney is useful only so long as he complies with defendant's wishes.

At the same time, the interview reflects defendant has clear memory of events, strong verbal skills, and apparent intelligence. In addition, his courtroom behavior is controlled in the sense that he is not disruptive and maintains a calm demeanor and is responsive to directives from the court.

## ANALYSIS

The principles of law by which the evidence is measured are set out in the January 2003 Decision and are not repeated here other than to reiterate that the issue is whether defendant has a mental disease or defect that renders him unable to assist properly in his defense. Ability to assist properly in one's defense is "'the capacity to provide whatever assistance counsel requires in order to explore and present an adequate defense.'" January 2003 Decision 11, quoting R. Bonnie, "*The Competence of Criminal Defendants: Beyond* Dusky *and* Drope," 47 U. MIAMI L. REV. 539, 552 (1993); *see also, Dusky*, 362 U.S. at 402. Factors the court may consider include, *inter alia*, testimony from psychiatrists, the defendant's behavior – both before the court and elsewhere, intelligence, lapses of memory, and unresponsiveness. *United States* v. *Blohm*, 579 F. Supp 495, 500 (S.D.N.Y. 1993). The court may also consider prior medical opinions on

9

defendant's competency. *United States* v. *Rivera*, 90 CR 1001-1, 1995 WL 20452, at *3 (N.D. Ill. Jan. 12, 1995).

Although the court continues to have considerable doubt that defendant has the present ability to assist properly in his defense, the evidence before the court is to the contrary. The court is not a mental health professional and, therefore, must rely on the expert opinions in the record as to whether defendant has a mental disease or defect that interferes with his ability to cooperate with counsel. Both Dr. Weaver and Dr. Roesch are firm in their beliefs that defendant presently has the volitional ability to cooperate with counsel but chooses not to do so. There is also evidence that defendant, in fact, had discussions with Mr. Anderson and Mr. Wagner and did cooperate with them until each did something that displeased him. Defendant's refusal to continue in cooperation could be viewed as volitional if one accepts that his conduct stems from misunderstanding the role of an attorney rather than from delusional, narcissistic or paranoid thought processes rooted in a mental disease or defect. Certainly, it is not unusual for a defendant to assert that counsel is not properly representing him or to deflect blame from himself onto the lawyer or "the system" for the predicament in which he finds himself. Although these theories are usually dispelled as an attorney-client relationship grows and the defendant faces the reality that as a person charged with serious crime he is in no position to advocate for himself, defendant Salley has such confidence in his own ability that he sees no reason to rely on counsel.[8]

---

[8]Moreover, in her report Dr. Scronce conceded that grandiose and paranoid personality features may not rise to the level of delusional thinking, particularly where there is no clear break from reality. Scronce Report at 10. Applied here, while much of Salley's thinking concerning his ability to represent himself has exhibited grandiose and paranoid elements, such thinking has not risen to the level of a clear break from reality. Salley bases most of his ability to represent himself on two successful employment discrimination administrative appeals. *See* January 2003 Decision, 246 F. Supp. 2d at 974.

A somewhat similar situation was addressed in *Rivera*, 1995 WL 20452. One psychiatrist, who diagnosed major depression, reported that the defendant was able to properly assist his attorney. He "stressed that the court must distinguish between the defendant's ability to consult his attorney and to participate in the planning of his defense and the defendant's desire and willingness to do so." *Id.* at *3. Another psychologist testified that although the defendant had a factual understanding of the charges against him, he was "unable to assess various legal strategies and assist counsel in preparing a defense because the defendant always reverts back to the notion that there really is no need for a defense, believing instead that he can simply explain what happened to the court and the court will release him." *Id.* at *5. He also had difficulty concentrating and understanding. The psychologist believed that the mental illness caused defendant's inability to communicate with his attorneys. *Id.* Acknowledging that it was a close case, the court found defendant competent, crediting the psychiatrist's testimony offered at the competency hearing and the court's observations of the defendant's testimony, behavior and demeanor at the hearing. The court found that defendant's lack of communication with counsel was his own choice, based on the psychiatric evidence as well as the court's observation of defendant that he made rational arguments at one point as to why he needed to be returned to FMC Rochester and why he wanted new counsel. *Id.* at *6. The court inferred that because defendant was unhappy with the options available to him regarding the outcome of the proceedings, he saw no benefit in cooperating with his attorneys. Thus the court concluded that his refusal was not inability to communicate. The court concluded:

> Therefore, although it may be difficult to communicate with the defendant, the court finds that the defendant's depression does not render him unable to consult with his attorneys. It is undisputed that the defendant has a factual understanding

of the legal system; knows the roles and functions of courtroom personnel; understands the charges against him; and appreciates the seriousness of a potential conviction on those charges. The court also finds that the defendant has the sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding. Therefore, the court concludes that Mr. Rivera is presently legally competent to stand trial.

*Id.* *6. It is undisputed here also that defendant Salley has a factual understanding of the legal system; knows the roles and functions of courtroom personnel; understands the charges against him; and appreciates the seriousness of a potential conviction on those charges. In addition, as noted above, delusional disorders may wax and wane over time, and there is evidence that Delusional Disorder on which this court relied in finding defendant incompetent in the January 2003 Decision has waned. Dr. Weaver was able to evaluate defendant over a long period of time (four months). She believes that his Delusional Disorder has waned. Thus, her observations are entitled to the greatest weight among the experts. Based on all of the evidence received, the preponderance of the evidence is that the defendant understands the nature and consequences of the proceedings and has sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding. Therefore, the court concludes that defendant is competent to stand trial.

**ORDER**

This case will be called for a pretrial conference on February 4, 2004 at 9:30 a.m., for the purpose of admonishing the defendant as to his right to counsel and the dangers of waiving that right as well as to set a trial date. The parties are to submit, by January 28, 2004, a brief memorandum of law concerning whether, in light of the facts set out herein, defendant should be allowed to represent himself. Counsel for defendant and the government are further requested to

12

consider (and may include in their memoranda) the advisability of appointing a mental health advisor to the court as recommended by Dr. Roesch in his Report of October 12, 2002.

ENTER:

/s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: January 14, 2004